THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ODELL FORT, Defendant-Appellant.

First District (2nd Division) No. 1—04—1937

Opinion filed November 15, 2005.

2

HALL, J., concurring in part and dissenting in part.

Michael J. Pelletier and Ahmed A. Kosoko, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (James E. Fitzgerald, Annette Collins, Sally Dilgart, and Paula Borg, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

The trial judge convicted defendant, Odell Fort, of possession of a controlled substance and sentenced him to 30 months' imprisonment. Defendant does not challenge the conviction or the sentence. He does raise issues concerning other orders that flowed from the conviction.

Defendant contends: (1) it was error to impose a $500 assessment without first determining whether he had the ability to pay it; (2) he was entitled to a credit against the assessment based on the days he spent in custody before sentencing; (3) the statute mandating a $5 fee for deposit in the Spinal Cord Injury Paralysis Cure Research Trust Fund is unconstitutional; and (4) the compulsory extraction of his blood and perpetual storage of his DNA violate his fourth amendment right to be free from unreasonable searches and seizures.

We agree defendant is entitled to the credit against the assessment and we agree the imposition of the $5 fee violates his right to due process of law. We reject his other contentions.

FACTS

Since defendant does not challenge his conviction, there is no need to go into facts that led to it. Suffice it to say a police officer saw him throw six baggies into a garbage can and the baggies were found to contain crack cocaine.

At the sentencing hearing, after reviewing the presentence

investigation report and hearing arguments of counsel, the trial court sentenced defendant to 30 months' imprisonment. The court noted defendant spent 37 days in custody before the conviction, but did not credit those days against the assessment.

A form in the record lists the "fines, fees, assessments, penalties, and reimbursements" imposed by the court on defendant. They total $1,224. The following boxes are marked on the form:

"Costs and Fees

| | |
|---|---|
| Felony Complaint Filed-Clerk*** | $190 |
| Felony Complaint Conviction—State's Attorney*** | $60 |
| Preliminary Hearing—State's—Attorney*** | $20 |
| *** | |
| State DNA ID System*** | $200 |
| Violent Crime Victim Assistance*** | $20 |
| Criminal/Traffic Conviction Surcharge-Additional Penalty*** | $4 |
| Automation-Clerk*** | $5 |
| Document Storage-Clerk*** | $5 |
| Court Services-Sheriff*** | $15 |
| *** | |

Controlled Substance/ Cannabis/ Hypodermic Needles Offenses

| | |
|---|---|
| *** | |
| Assessment Controlled Substance*** | $500 |
| *** | |
| Crime Lab Drug Analysis-Northern*** | $100 |
| Trauma Fund*** | $100 |
| Trauma Fund Spinal Cord*** | $5 |
| *** | |
| TOTAL*** | $1224." |

DECISION

I. The Drug Assessment

Defendant was ordered to pay the $500 assessment pursuant to section 411.2(a)(4) of the Illinois Controlled Substances Act (Act) (720

ILCS 570/411.2(a)(4) (West 2002)). He makes two claims concerning the assessment.

■ First, he contends the assessment really is a fine and should not have been imposed without a finding of his ability to pay it as required by section 5—9—1(d) of the Unified Code of Corrections (Code) (730 ILCS 5/5—9—1(d) (West 2002)). Section 5—9—1(d) provides:

> "In determining the amount and method of payment of a fine, *** the court shall consider:
>
>> (1) the financial resources and future ability of the offender to pay the fine[.]" 730 ILCS 5/5—9—1(d) (West 2002).

■ Second, he contends section 110—14 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110—14 (West 2002)) entitles him to a $185 credit against the drug assessment because of the 37 days he spent in presentence incarceration. Section 110—14 provides:

> "Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant." 725 ILCS 5/110—14 (West 2002).

To resolve the issues raised by defendant, we first must determine whether the legislature intended the assessment to be a fine, that is, a pecuniary punishment imposed as part of a sentence, or something else, like a fee or court cost, which is a charge taxed by a court, compensatory in nature. *People v. Elizalde*, 344 Ill. App. 3d 678, 682, 800 N.E.2d 339 (2003); *People v. Littlejohn*, 338 Ill. App. 3d 281, 283, 788 N.E.2d 339 (2003). If it is a fine, defendant is entitled to the $185 setoff.

■ Contrary to the State's contention, the credit issue was not forfeited by defendant's failure to raise it at sentencing or in a post-sentencing motion. The normal rules of forfeiture do not apply to a sentence credit request. A defendant has the right to raise it for the first time on appeal. *People v. Woodward*, 175 Ill. 2d 435, 457, 677 N.E.2d 935 (1997).

That brings us to the tricky thicket of statutory interpretation. First and foremost, we must ascertain and give purpose to the legislature's intent. *People v. Ward*, 215 Ill. 2d 317, 324, 830 N.E.2d 556 (2005). We first look to the language of the statute we are attempting to construe. *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 318, 547 N.E.2d 437 (1989). The best indication of legislative intent is the "plain and ordinary meaning of the language used." *Littlejohn*, 338 Ill. App. 3d at 283. We are permitted "to turn to a dictionary when determining the meaning of an otherwise undefined

word or phrase." *People v. Skillom*, 361 Ill. App. 3d 901, 909 (2005), citing *Ward*, 215 Ill. 2d at 325.

There are times when courts cannot determine the meaning of a statute by examining its plain language or when the statute is capable of being understood by reasonably well-informed persons in two or more different senses, thus creating statutory ambiguity. *People v. Purcell*, 201 Ill. 2d 542, 549, 778 N.E.2d 695 (2002). Where ambiguity is present, we are allowed to resolve the statute's ambiguity by considering its legislative history and debates, and by examining the statute's purposes and underlying policies. *Advincula v. United Blood Services*, 176 Ill. 2d 1, 19, 678 N.E.2d 1009 (1996).

■ The word that commands our attention is "assessment," as used in section 411.2. Section 411.2(a) provides: "Every person convicted of a violation of this Act [Illinois Controlled Substances Act] *** shall be assessed for each offense a sum fixed at: *** (4) $500 for a Class 3 or Class 4 felony." 720 ILCS 570/411.2(a) (West 2002).

Section 411.2 makes no reference to the sentence credit provisions of section 110—14. Nor does it contain any requirement that the trial judge consider a defendant's ability to pay the assessment. It does contain provisions for defendants to reduce or suspend payment of the assessment by entering community service (subsection (e)) or entering an approved substance abuse intervention or treatment program (subsection (f)). 720 ILCS 570/411.2(e), (f) (West 2002). The assessments collected are used for alcohol and drug treatment and care programs, State and Cook County.

The State, pointing to the wording and placement of section 411.2, contends the assessment is something other than a fine, making incarceration credits and inquiries into ability to pay inapplicable.

Several courts from other appellate districts have decided the credit issue. They represent a shutout against the State. No reported decision supports the State's position. We summarize the relevant decisions:

(1) Second Appellate District: *People v. Rodriguez*, 276 Ill. App. 3d 33, 41, 657 N.E.2d 699 (1995) (a defendant is entitled to a $5-a-day credit for each day incarcerated on a bailable offense when he does not supply bail, "and this credit is applicable to a statutory drug offense assessment"); *People v. Otero*, 263 Ill. App. 3d 282, 287, 635 N.E.2d 1073 (1994) ($5-per-day credit may be applied against either the $2,000 statutory assessment or the street value fine, but not both);

(2) Third Appellate District: *Littlejohn*, 338 Ill. App. 3d at 284 ("Pursuant to section 110—14, the defendant should be awarded a credit of $1,360 against his drug assessment fines, his street-value fines, the trauma center fine and the crime stoppers fine"); *People v.*

*Gathing,* 334 Ill. App. 3d 617, 620, 778 N.E.2d 215 (2002) (The mandatory drug assessment "is in the nature of a fine and is properly offset by the presentence credit created by section 110—14 of the Code"); *People v. Reed,* 255 Ill. App. 3d 949, 951, 627 N.E.2d 729 (1994) (The $5-a-day credit for each day incarcerated on a bailable offense when defendant did not supply bail is applicable to a street value fine "and to a statutory drug offense assessment"); *People v. Brown,* 242 Ill. App. 3d 465, 466, 610 N.E.2d 776 (1993) (Defendant's "$5-per-day credit for pretrial incarceration which is allowed by section 110—14 should have been used to offset his $500 assessment");

(3) Fifth Appellate District: *People v. Haycraft,* 349 Ill. App. 3d 416, 430, 811 N.E.2d 747 (2004) (The $5-per-day credit "may be applied against either the statutory assessment or the street value fine, but not both").

The First and Fourth Appellate Districts have not yet spoken on the sentence credit issue. Defendant relies primarily on *Gathing.* The State contends *Gathing* and all the other cases cited above were wrongly decided.

Admittedly, the cases do not contain in-depth analysis of legislative intent. *Gathing* relies on two points. The first is Black's Law Dictionary definitions of "assessment"—" '[i]mposition of something, such as a tax or fine, according to an established rate' "—and "fine"— " '[a] pecuniary criminal punishment or civil penalty payable to the public treasury." *Gathing,* 334 Ill. App. 3d at 620, quoting Black's Law Dictionary 111, 647 (7th ed. 1999). The second point relied on in *Gathing* is that payment of the assessment is to a special treatment fund " 'within the State Treasury.' " *Gathing,* 334 Ill. App. 3d at 620, quoting 720 ILCS 570/411.2(h) (West 2000).

*Brown* supplies another reason for holding the credit applies: "Had the legislature clearly intended to exclude section 411.2 from such credits, the legislature could have specifically made such an exclusion." *Brown,* 242 Ill. App. 3d at 466.

We would add that the legislature has demonstrated it knows how to make the $5-per-day credit inapplicable to a special fund. It did so in 1985 when it amended the Violent Crime Victims Assistance Act to provide fines imposed for certain listed offenses are "not subject to the provisions of section 110—14 of the Code of Criminal Procedure of 1963" (Ill. Rev. Stat. 1985, ch. 70, par. 510(b)). See *People v. Hare,* 119 Ill. 2d 441, 449-50, 519 N.E.2d 879 (1988).

We decline the State's invitation to reject the consistent line of appellate decisions that allows the sentence credit against the drug assessment.

We are instructed:

"[O]ne district of the State appellate court is not always bound to follow the decisions of other districts, although there may be compelling reasons to do so when dealing with similar facts or circumstances. [Citation.] Otherwise, such decisions have only persuasive value for the appellate court." *In re May 1991 Will County Grand Jury*, 152 Ill. 2d 381, 398, 604 N.E.2d 929 (1992).

We are persuaded.

A strong case can be made that section 411.2 is ambiguous on the question of fine versus fee. It is in a section separate from the fines provision for convictions under the Controlled Substances Act (720 ILCS 570/411.1 (West 2002)). Section 411.2 does not use the word "fine," and subsection (b) reads: "The assessment under this section is in addition to and not in lieu of *any fines,* restitution costs, forfeitures or other assessments authorized or required by law." (Emphasis added.) 720 ILCS 570/411.2(b) (West 2002). Still, in subsection (f) the statute refers to the assessment as a "penalty" ("The court shall not reduce the *penalty* under this subsection unless \*\*\*") and concludes: "Nothing in this Section shall be deemed to affect or suspend any *other fines,* restitution costs, forfeitures or assessments imposed under this or any other Act." (Emphasis added.) 720 ILCS 570/411.2(f) (West 2002).

Assuming the existence of ambiguity, we believe there are two sound reasons for adopting the results reached by the appellate court decisions.

First, we take note of the Senate debate on July 18, 1991. Referring to the proposed section 411.2, Senator Cullerton asked: "I'm just curious, though, if—does this reallocate money which is now being sent somewhere, or does it purport to increase the *fines* for people who are charged with drug offenses?" (Emphasis added.) 87th Ill. Gen. Assem., Senate Proceedings, July 18, 1991, at 186 (statements of Senator Cullerton). Senator Barkhausen, a sponsor of the bill, answered:

"Yes, it's an increase. It's a new *fine*; although, we had amended the bill a second time through, and I believe the provisions are here again—I was just looking for them—to give the court some discretion to require community service work for those who can't pay *fines.* But this is new money. It's not a reallocation of any old money." (Emphasis added.) 87th Ill. Gen. Assem., Senate Proceedings, July 18, 1991, at 187 (statements of Senator Barkhausen).

When we construe a statute, "it is instructive to consider relevant statements by legislatures concerning the nature and effect of the proposed law." *Sulser v. Country Mutual Insurance Co.,* 147 Ill. 2d 548, 555, 591 N.E.2d 427 (1992). Nothing in the Senate debates indicates an intent that the drug assessment was to be anything other than a species of fine.

The second reason for following the appellate decisions has to do with a well-established rule of legislative construction. Our supreme court has held: "[W]hen the legislature amends a statute, but leaves unchanged portions which have been judicially construed, the unchanged position will retain the construction given prior to the amendment." *People v. Agnew*, 105 Ill. 2d 275, 280, 473 N.E.2d 1319 (1985).

Section 411.2 was amended in 1994, 1995, and 1997. None of the amendments referred to the credit-against-assessment issue. *Brown* was decided in 1993, *Reed* in 1994, *Otero* in 1994, and *Rodriguez* in 1995. The legislature is presumed to know how courts have interpreted a statute and may amend the statute if it intended a different construction. *People ex rel. Department of Labor v. Tri State Tours, Inc.*, 342 Ill. App. 3d 842, 847, 795 N.E.2d 990 (2003). We assume the legislature saw no need to change the results reached in the appellate decisions.

■ We conclude defendant was entitled to a credit of $185 against the $500 assessment. Although we agree the assessment is a kind of fine, we see no need to remand for an inquiry into defendant's ability to pay it. The assessment is mandatory. The legislature provided for ways to eliminate or reduce it. Defendants convicted of drug offenses are given the opportunity to improve their lives and the lives of others (subsections (e) and (f)). That is the statutory plan set out in section 411.2 and it tells us why the legislature placed it in its own section, separate from traditional fines.

## II. Spinal Cord Research Fund Fee

■ Defendant contends his due process rights were violated by the trial court's imposition of a $5 fee for deposit into the Spinal Cord Injury Paralysis Cure Research Trust Fund (Spinal Cord Fund). 730 ILCS 5/5—9—1.1(c) (West 2002). Defendant contends collecting a $5 Spinal Cord Fund fee from a person convicted of a drug-related offense is an arbitrary and unreasonable exercise of the State's police power. See *People v. Wick*, 107 Ill. 2d 62, 63, 481 N.E.2d 676 (1985). He says the statute bears no rational relationship to the public interest intended to be protected.

All statutes are presumed to be constitutional. *People v. Wilson*, 214 Ill. 2d 394, 398-99, 827 N.E.2d 416 (2005). The party challenging the statute's validity bears the burden of clearly demonstrating a constitutional violation. *Wilson*, 214 Ill. 2d at 399. If reasonably possible, a court should construe a statute so as to confirm its constitutionality and validity. *Wilson*, 214 Ill. 2d at 399. Whether a statute is constitutional is a question of law that we review *de novo*. *People v. Malchow*, 193 Ill. 2d 413, 418, 739 N.E.2d 433 (2000). Where the

statute under consideration does not affect a fundamental constitutional right, we ask whether the statute " ' "bear[s] a reasonable relationship to the public interest intended to be protected," ' " and whether " ' "the means adopted [are] a reasonable method of accomplishing the desired objective." ' [Citations.]" *People v. Lindner*, 127 Ill. 2d 174, 179-80, 535 N.E.2d 829 (1989).

Defendant compares the statute in this case to that in *Lindner*, where the defendant challenged two sections of the Illinois Vehicle Code that provided for mandatory revocation of the offender's driver's license on conviction of certain sex offenses. *Lindner*, 127 Ill. 2d at 176, citing Ill. Rev. Stat. 1987, ch. 95½, pars. 6—204(a)(1), 6—205(b)(2). The court held the penalty of license revocation bore no relationship to the offense, whether the purpose of the statute was the safe operation of motor vehicles or the punishment or deterrence of the defendants. *Lindner*, 127 Ill. 2d at 181. There was no rational basis for choosing to punish some particular offenses not involving a vehicle with revocation while excluding others. *Lindner*, 127 Ill. 2d at 185. See also *People v. Lawrence*, 206 Ill. App. 3d 622, 624, 565 N.E.2d 322 (1990) (imposing a suspension of a driver's license as a penalty for unlawful delivery of a controlled substance and not other crimes that could be furthered by driving was an arbitrary decision of the legislature.)

In response, the State contends the legislature reasonably determined that drug offenders cause traffic accident injuries to members of the community and should be made to contribute to the research and care of those injured. The State relies on *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 147-48, 787 N.E.2d 786 (2003), where the court held a tax on tobacco products was reasonably related to the State's interest in preserving the health of its citizens by providing for long-term medical care. The State contends the $5 fee is reasonably related to the State's interest in funding spinal cord injury research because drug offenders are likely to drive under the influence of drugs and cause spinal cord injuries. The State attaches statistics to its brief showing the number of spinal cord injuries caused by drunk drivers. We do not consider these statistics as they were not introduced into evidence in the trial court. See *People v. Woolley*, 178 Ill. 2d 175, 204, 687 N.E.2d 979 (1997) (an argument relying on matters outside the record may not be considered on appeal).

Recently, another division of this court examined the statute at issue and found it to be unconstitutional. *People v. Rodriguez*, 362 Ill. App. 3d 44 (2005). The court said:

> "While driving under the influence of a controlled substance arguably bears a rational relationship to spinal cord research, we can-

not say that the simple possession of a controlled substance, an offense that does not involve or require the use of a motor vehicle, is reasonably related to spinal cord research. Furthermore, the parties have not called to our attention any other statutes that impose a fee earmarked for the Spinal Cord Injury Research Fund upon defendants whose crimes did not involve motor vehicles. Accordingly, we find the relationship between possession of a controlled substance and the Spinal Cord Injury Research Fund simply too attenuated to survive defendant's due process challenge." *Rodriguez*, 362 Ill. App. 3d at 54.

Given the State's virtually identical argument for constitutionality in this case, we see no reason to depart from the holding in *Rodriquez*. We find the imposition of the $5 fee violated defendant's substantive due process rights. We reverse the order that defendant pay a $5 fee to the Spinal Cord Injury Paralysis Cure Research Trust Fund.

III. DNA

■ Defendant contends the compulsory extraction and perpetual storage of his DNA violate his fourth amendment right to be free from unreasonable searches and seizures under the federal and state constitutions. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Section 5—4—3 of the Unified Code of Corrections mandates DNA sampling from any person convicted or found guilty "of any offense classified as a felony under Illinois law." 730 ILCS 5/5—4—3(a) (West 2002).

This court repeatedly has addressed this issue and rejected defendant's position. See *People v. Redmond*, 357 Ill. App. 3d 256, 264, 828 N.E.2d 1206 (2005); *People v. Foster*, 354 Ill. App. 3d 564, 571, 821 N.E.2d 733, 740 (2004); *People v. Butler*, 354 Ill. App. 3d 57, 68-69, 819 N.E.2d 1133 (2004); *People v. Edwards*, 353 Ill. App. 3d 475, 486, 818 N.E.2d 814 (2004); *People v. Peppers*, 352 Ill. App. 3d 1002, 1007-08, 817 N.E.2d 1152 (2004); *People v. Ramos*, 353 Ill. App. 3d 133, 154, 817 N.E.2d 1110 (2004); *People v. Hall*, 352 Ill. App. 3d 537, 549-50, 816 N.E.2d 703 (2004); *People v. Garvin*, 349 Ill. App. 3d 845, 856 (2004), *appeal allowed*, 212 Ill. 2d 541, 824 N.E.2d 287 (2004). Every state and federal court that has addressed the constitutionality of a similar DNA statute has upheld the statute. *Peppers*, 352 Ill. App. 3d at 1004-05, citing *Green v. Berge*, 354 F.3d 675, 679 (7th Cir. 2004), and *Garvin*, 349 Ill. App. 3d at 854.

We find, consistent with virtually unanimous authority, that section 5—4—3 is constitutional and defendant's constitutional rights were not violated by the order to extract his DNA.

CONCLUSION

For the reasons stated, we amend the Costs and Fees order to reflect a credit of $185 against the $500 "Assessment Controlled Substance," and we strike from the order the $5 fee for the "Trauma Fund Spinal Cord." We affirm the trial court's order that blood be extracted from the defendant for storage of his DNA.

Affirmed as modified.

GARCIA, P.J., concurs.

JUSTICE HALL, concurring in part and dissenting in part:

I concur with the majority's decision except for its conclusion that section 5—4—3 of the Code (730 ILCS 5/5—4—3 (West 2002)), as amended by Public Act 92—829, effective August 22, 2002, is constitutional. I continue to believe that the compulsory collection and storage of DNA evidence from convicted felons is unconstitutional because it violates the offender's fourth amendment right to be free from unreasonable searches and seizures. See *People v. Peppers*, 352 Ill. App. 3d 1002, 1013-14, 817 N.E.2d 1152, 1162-63 (2004) (Hall, J., dissenting); *People v. Zhani*, No. 1—03—2326 (2004) (unpublished order under Supreme Court Rule 23) (Hall, J., concurring in part and dissenting in part).

I believe that requiring DNA samples from convicted felons cannot be justified under either the special needs exception or the balancing test. In regard to the special needs exception, the mandatory collection of DNA evidence from convicted felons cannot be considered a special need since it does not serve any need above and beyond law enforcement purposes.

Under the balancing test, the court is charged with balancing the privacy interests of the prisoner in remaining free of bodily invasion against the State's interest in carrying out the search. However, in light of the State's predominate law enforcement interests compared to the subject prisoner's greatly reduced privacy rights, one would be hard-pressed to find a case in which the balance would not be struck in favor of the government. The balancing test favors the government to such an extent that it cannot fairly determine if the compulsory collection of DNA evidence from a prisoner, based solely on the prisoner's status as a convicted felon, is a permissible exception to the fourth amendment's requirements of probable cause and individualized suspicion. A balancing test that always favors one side is not actually a test at all. Accordingly, I respectfully concur in part and dissent in part.